The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated March 14, 1995, and at and after the hearing as:
* * * * * * * * * * *
STIPULATIONS
1. The Pre-Trial Agreement dated March 14, 1995 which stipulated to jurisdictional and factual issues, including medical 
rehabilitation records, is hereby incorporated herein by reference.
2. The deposition testimony of Dr. hardy is hereby made part of the evidentiary record.
3. The Industrial Commission Form 21, Agreement for Compensation, approved on January 11, 1994, is hereby incorporated herein by reference.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, fifty-eight year old married male, who is currently receiving Social Security Disability Benefits. He only has a seventh grade education and has always done physical labor, but is no longer able to return to that type of work because of the permanent back injury involved.
2. When injured, plaintiff had been a night watchman and boiler operator at defendant-employer's lumber drying business for almost two years and had earlier worked at the same location for defendant-employer's predecessors Kemp Furniture Company and then Universal Furniture.
3. Although twenty years earlier he had sustained a disc herniation at the same L5-S1 level of his lumbosacral spine requiring corrective surgery; plaintiff fully recovered from that injury, which did not contribute to the recurrent disc herniation sustained at that level on October 4, 1993 requiring further corrective back surgery or his resulting permanent partial disability from that injury.
4. As a night watchman and boiler operator plaintiff was not only responsible for patrolling the premises and punching a time clock, but insuring the boiler was fired requiring him to manually feed the boiler on occasion and thereby the type of physical labor involving bending, twisting and lifting that he can no longer engage because of the permanent back injury sustained.
5. On October 4, 1993 as part of his duly assigned ordinary employment duties as a night watchman and boiler operator plaintiff was involved in using a rake to clean out a boiler grate when the rake became caught in the same grate and in the process of lifting up one end of the grate sustained a recurrent right-sided disc herniation at the L5-S1 level of his lumbosacral spine and thereby the admittedly compensable back injury giving rise hereto manifested by back and right leg pain.
6. Plaintiff was initially seen by Dr. Le, who provided a conservative course of treatment before referring him to an orthopedic surgeon, Dr. Joe McLamb. Dr. McLamb attempted a similar course of treatment, but subsequently referred plaintiff to a neurosurgeon, Dr. Ira Hardy of Greenville, for a surgical evaluation when his condition did not improve.
7. In January of 1994 Dr. Hardy performed corrective surgery for plaintiff's resulting recurrent disc herniation in the nature of a limited laminectomy and discectomy at the affected L5-S1 level.
8. Although having neither reached maximum medical improvement and/or the end of the healing period from the same surgery nor then able to return to his regular night watchman and boiler operator's job; by July 11, 1994 plaintiff had sufficiently recovered from his injury so as to be able to attempt to return to alternate lighter work not requiring lifting, pulling and pushing more than twenty-five pounds and he contemporaneously attempted to return to work for defendant-employer as a stick layer.
9. The stick layer's job required plaintiff to stand in one position at length and pick up several two pound wooden sticks or slats in each hand from a pile of slats ranging from five inches in height to shoulder height and turn 180 degrees placing the slats between rows of lumber requiring the type of continual bending, twisting and lifting he was no longer capable of because of his permanent back injury.
10. Plaintiff attempted the stick layer's job for three and one half hours, but was forced to stop as a result of developing incapacitating pain. Because he was unable to obtain an immediate appointment with Dr. Hardy, on the following day plaintiff was seen by Dr. James Stackhouse, who took him out of work for ten days until he could schedule an appointment with Dr. Hardy and provided a conservative course of treatment consisting of medication and bed rest.
11. Thereafter on July 20, 1993 plaintiff returned to Dr. Hardy, who recommended a diagnostic myelogram to determine whether he had sustained another recurrent disc herniation because he was continuing to experience incapacitating back problems.
12. Defendant-carrier, however, would not then authorize the recommended myelogram and instead arranged for plaintiff to attempt to return to a modified stick layers job that allowed him to sit down in a chair and rest every thirty minutes between cycles and only initially required him to work two hours a day, with his hours gradually increasing to full time. Although plaintiff was also to be provided with some type of mechanical device that allowed him to pick up sticks off the pile without bending over, he was not.
13. On August 1, 1993 plaintiff attempted to return to the modified stick layers job; but was forced to stop the same job after a week because of incapacitating back and leg pain and on the following Monday was seen by his family physician, Dr. Roy Nation, who took him out of work until he could be seen by Dr. Hardy.
14. In October of that year plaintiff returned to Dr. Hardy and underwent another myelogram after defendant-carrier finally agreed to authorize one, which did not show a recurrent disc herniation.
15. Ultimately plaintiff reached maximum medical improvement and/or the end of the healing period from and following the accident giving rise hereto and corrective surgery necessitated thereby on November 14, 1994, at which time he retained a fifteen percent permanent partial disability of the back from the same injury and as a result of his permanent back injury is unable to return to not only his regular night watchman and boiler operator's job, but any other type of physical labor, which is the only type of work he had ever done.
16. Defendant-employer has not been able to provide plaintiff with the type of non-physical work required by his permanent back injury nor is there any evidence that this type of work is available for someone of plaintiff's advanced age, limited education, background and work experience, which has always involved physical work, much less that he can obtain such work in an open and competitive labor market; but rather, under the circumstances it would be futile for him to attempt to do so.
17. Although defendant-carrier engaged the services of a rehabilitation specialist in an unsuccessful attempt to provide plaintiff with suitable alternate non-physical work on the premises; the involved vocational rehabilitation specialist made no attempt to find such work elsewhere and, as previously stated, according to the credible evidence such work is not reasonably available for plaintiff and it would be futile for him to look for it.
18. The provisions of N.C. Gen. Stat. § 97-32.1 regarding trial return to work are not applicable because they did not become effective until October 1, 1994 after plaintiff's unsuccessful attempts to return to work; therefore, when plaintiff returned to alternate work for defendant-employer in the stick layer's job earning the same wage on July 11, 1994 his disability presumptively ended and he was no longer entitled to continuing compensation benefits under the Industrial Commission's Form 21, Agreement for Payment of Compensation, approved January 11, 1994, requiring defendant-employer to obtain the Industrial Commission's approval before stopping payment of benefits under the same Award; but rather, no further benefits were due under the original Award after plaintiff returned to work for defendant-employer on July 11, 1994 and as a result he is not entitled to the ten percent late penalty requested.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. With the exception of July 11, 1994 and the period from August 1, 1994 through August 5, 1994 when he unsuccessfully attempted to return to alternate lighter work, plaintiff has remained totally disabled as a result of his permanent November 4, 1993 back injury since December 8, 1993 entitling him, subject to a credit for compensation benefits previously paid, to compensation at a weekly rate of $183.55 from December 8, 1993 and continuing at the same rate so long as he remains disabled, subject to a change of condition and further order of the Commission. N.C. Gen. Stat. § 97-2 (6) and § 97-29.
2. For the reasons stated in the above Findings of Fact, plaintiff is not entitled to a ten percent late penalty. N.C. Gen. Stat. § 97-32.1 and § 97-18.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of his continuing total disability, compensation at a rate of $183.55 per week from December 8, 1993 and continuing at the same rate so long as he remains disabled, with the exception of July 11, 1994 and the period from August 1, 1994 through August 5, 1994 when he unsuccessfully attempted to return to alternate lighter work and subject to a change of condition or further order of the Commission. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved and a credit for the compensation benefits paid under the Industrial Commission Form 21, Agreement for Payment of Compensation, approved January 11, 1994.
2. At this time a reasonable attorney's fee in the amount of twenty-five percent of the accrued net compensation benefits due plaintiff is hereby approved for plaintiff's counsel, which shall deducted and paid directly thereto. For the balance of his fee defendants shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably necessary to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the back injury giving rise hereto, including, as part thereof, plaintiff's prior corrective back surgery, when bills for the same are submitted in accordance with approved Industrial Commission procedure.
4. Defendants shall bear the costs, including as part thereof the $350.00 expert witness fee previously awarded Dr. Hardy for his deposition testimony, if not previously paid.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ COY M. VANCE COMMISSIONER
DCS/bjp